IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

FILED

2007 MAY 17 A 9:09

| | | |
|---|---|---|
| **SCOTT LAUER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | : | **Case No.** 3:07-cv-192 |
| | ) | |
| **ATTENTUS HEALTHCARE CORP.,** | ) | **JURY REQUESTED** |
| **ATTENTUS OF SCOTT COUNTY, LLC,** | ) | |
| **JLL PARTNERS, INC.,** | ) | |
| **CATHERINE MARTIN,** | ) | |
| **JOHN MARTIN,** | ) | |
| **and SCOTT COUNTY HOSPITAL,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff Scott Lauer, by and through counsel, for cause of action against the Defendants, respectfully brings the following causes of action to this Honorable Court.

### JURISDICTION

1. This action is brought pursuant to the laws of the United States and the State of Tennessee. Jurisdiction is founded upon 28 U.S.C. § 1332 (diversity). The amount in controversy is in excess of $75,000.00.

2. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391, as a substantial number of pertinent acts took place in this judicial district and the injuries and damages referenced herein were initially inflicted within this judicial district.

### PARTIES

3. Plaintiff Scott Lauer, a physician specializing in obstetrics and gynecological surgery, is a resident of Colleyville, Texas, just outside of Dallas. Dr. Lauer was also a resident of

Colleyville, Texas when the corporate Defendants began efforts to persuade Dr. Lauer to close his practice in Texas, relocate his family, and set up a new medical practice in Scott County, Tennessee.

4. Defendant Attentus Healthcare Corporation is a foreign corporation, incorporated under the laws of Delaware, with its principal place of business at 113 Seabord Lane, Franklin, Tennessee 37067. Attentus Healthcare Corp. can be served with process through its registered agent, Lee C. Dilworth, 113 Seabord Lane, Suite B-200, Franklin, Tennessee 37067.

5. Defendant JLL Partners, Inc. is a foreign corporation, incorporated under the laws of Delaware, with its principal place of business at 450 Lexington Avenue, New York, New York. JLL Partners, Inc. be served with process through its registered agent, C T Corporation System, 111 Eighth Avenue, New York, New York.

6. Defendant Attentus of Scott County, LLC is a domestic limited liability company, which also has its principal office at 113 Seabord Lane, Franklin, Tennessee 37067. Attentus of Scott County, LLC also can be served with process through its registered agent, Lee C. Dilworth, 113 Seabord Lane, Suite B-200, Franklin, Tennessee 37067.

7. Defendant Scott County Hospital is a domestic corporation and/or a business entity, related to one or both Attentus entities referenced above, which uses the name "Scott County Hospital" as an assumed name. Scott County Hospital also has its principal office at 113 Seabord Lane, Franklin, Tennessee 37067 and likewise can be served with process through its registered agent, Lee C. Dilworth, 113 Seabord Lane, Suite B-200, Franklin, Tennessee 37067.

8. Defendant John Martin is a resident of Scott County, Tennessee. He may be served with process at 189 Andrew Drive, Oneida, Tennessee 37841.

9. Defendant Catherine Martin is a resident of Scott County, Tennessee. She may be

served with process at 189 Andrew Drive, Oneida, Tennessee 37841.

## FACTUAL BACKGROUND

**The Hospital's Recruitment Of Dr. Lauer To Oneida, Tennessee From Texas**

10. Scott Lauer is a board certified obstetrician and gynecologist.

11. In early 2006, Dr. Lauer was contacted by Charles Sexton, who was acting as an employee and/or agent of Attentus Healthcare Corp., Attentus of Scott County, and Scott County Hospital (hereafter "the Tennessee corporate Defendants"). Mr. Sexton represented to Dr. Lauer that the business entities with which he was affiliated were interested in recruiting a physician specializing in obstetrics and gynecology to establish a specialized medical practice in Scott County, Tennessee in association with Scott County Hospital.

12. At the time, Plaintiff had a successful practice in suburban Dallas, Texas, where he lived with his wife and two young children.

13. Thereafter, the Tennessee corporate Defendants, acting through agents Charles Sexton, Dale Mulder (who was chief executive officer of Scott County Hospital at the time), and others, began to recruit Dr. Lauer in an effort to persuade Dr. Lauer to relocate to Scott County from Texas.

14. During the course of the recruitment process, representations were made by agents of each of the Tennessee corporate Defendants which induced Dr. Lauer to sign a contract with Attentus of Scott County, LLC, d/b/a Scott County Hospital (hereafter "the hospital") and to relocate to Scott County from Texas.

15. The recruitment of Dr. Lauer and the negotiation and execution of the resulting contract on behalf of the hospital were led by Dale Mulder. Mr. Mulder, along with Mr. Sexton and

James McLendon, Vice President of Medical Staff Development for Defendant Attentus Healthcare Corp., were two of the agents of the Tennessee corporate Defendants herein who made representations which persuaded Dr. Lauer to sign the referenced contract and move to Oneida from Texas.

16. The referenced representations made by agents of the Tennessee corporate Defendants include, but are not limited to, representations that the Tennessee corporate Defendants were honestly committed to increasing the quality of care Scott County Hospital could provide to the community -- in significant part by recruiting highly credentialed specialists such as Dr. Lauer. The hospital's strategy, the Tennessee corporate Defendants' agents explained, was that bringing highly trained specialists such as Dr. Lauer into the region served by the hospital would allow more patients to select Scott County Hospital for procedures and services. As an example, during the recruitment process, Mr. Mulder represented to Dr. Lauer that by having someone with Dr. Lauer's training and services in the community, the clear majority of women who had been choosing to go to Knoxville or Oak Ridge for OB/GYN hospital services would become more likely to choose Scott County Hospital in the future.

17. Further, agents of the Tennessee corporate Defendants represented that because the procedures and services which Dr. Lauer would provide would also be profitable for the hospital, then the community, the hospital, and Dr. Lauer would all benefit from Dr. Lauer relocating to Scott County.

18. Acting as an agent of the Tennessee corporate Defendants, Mr. Dale Mulder also represented during the recruitment process that part of the reason that a clear majority of women were choosing to go outside Scott County for OB/GYN hospital services was that Scott County only

had a pair of family practice physicians -- Catherine Martin and John Martin -- who delivered babies at the hospital.

19. Whether on account of the level of training and specialization, for reasons more specific to the Martins individually, or for some combination of those reasons, Mr. Mulder clearly expressed a desire that Scott County Hospital have someone of Dr. Lauer's training as head of the hospital's OB department to deliver more specialized care and to attract more patients for the hospital.

20. Over a period of several months, the Tennessee corporate Defendants, acting through agents Charles Sexton, Dale Mulder, James McLendon and others, recruited Dr. Lauer, paying his travel expenses to visit Scott County and Scott County Hospital on more than one occasion and communicating frequently with Dr. Lauer by phone and e-mail.

21. Relying on the representations referenced above, Dr. Lauer agreed to a contract proposed by agents of the Tennessee corporate Defendants; based upon information and belief, the contract was drafted by Lee Dilworth, who at all relevant times was an officer and agent of each of the Tennessee corporate Defendants, based on a form the Tennessee corporate defendants had used repeatedly prior to that time.

22. In the text of the contract, which was signed by Dr. Lauer and by Dale Mulder on behalf of Attentus of Scott County, LLC, d/b/a Scott County Hospital on July 25, 2006, the hospital both recited its commitment to patient care (in the first three paragraphs and throughout) and outlined in Exhibits B through D of the contract (which are specifically incorporated into the agreement by express reference) a commitment to provide Dr. Lauer with a significant financial package if Dr. Lauer would relocate to Scott County and affiliate with Scott County Hospital.

23. What motivated Dr. Lauer to accept the referenced agreement was the hospital's clear commitment to raise the level of specialization afforded to the community served by the hospital, as had been expressed by agents of the Tennessee corporate Defendants during the recruitment process as referenced above, coupled with the strong financial terms, guarantees, amenities, and incentives pledged by the hospital for Dr. Lauer, for his family, and for the establishment of Dr. Lauer's practice in Scott County, Tennessee.

24. Because the hospital was anxious for Dr. Lauer to start as soon as possible, the hospital and Dr. Lauer agreed that Dr. Lauer would begin in October of 2006, even though Dr. Lauer's family would not join him until the first of the year.

25. Dr. Lauer and his wife Kimberly have two children; Alexander, who is thirteen, and Abigayle, who is nine. Alexander is a special needs student. Because the Lauer children were in school, the agents of the Tennessee corporate Defendants involved in the recruitment process referenced above, the employees and agents of the hospital, and Defendants Catherine Martin and John Martin all recognized and understood that it would be best that the children move to Oneida during the winter break of the school year.

26. Consequently, at the outset of the agreement, the hospital represented and established that Dr. Lauer would not be required to take unscheduled emergency calls until January, 2007, so that Dr. Lauer could return to Texas during the weekends to be with his family and could continue to prepare his family for the move to Scott County. This representation and agreement was relied upon by Dr. Lauer and was subsequently confirmed by other employees and agents of the hospital during the initial weeks the contract was in effect, as is evidenced by the course of dealing of the parties during that period of time.

27. Further, this arrangement for Dr. Lauer concerning emergency calls on the weekends was well known and understood by Defendants Catherine Martin and John Martin, as Dr. Lauer was not assigned unscheduled emergency calls during the initial weeks the contract was in effect, through the end of November of 2006 (though Dr. Lauer was regularly scheduled for emergency call on weekdays during said period).

28. Indeed, the only instance when Dr. Lauer worked unscheduled emergency call during any weekend during the months of October or November of 2006 was when Dr. Lauer volunteered to do so one weekend when his family came to Oneida for a planned visit in order for them to become better acquainted with the community and their new surroundings prior to the move over the winter holiday break.

29. Also as part of Dr. Lauer's effort's to accommodate the hospital's desire for him to begin work as soon as possible, Dr. Lauer worked diligently to secure malpractice coverage in Tennessee, relying on the hospital's representation that it would reimburse him for the cost of the first year's premium and taking at face value the hospital's representation that the hospital had appropriately credentialed doctors available to provide emergency call coverage for Dr. Lauer when Dr. Lauer was unavailable. Dr. Lauer's malpractice carrier, The Doctors Company, gave him oral approval to begin practicing as of his start date of October 10, 2006 and Dr. Lauer promptly forwarded a copy of the face sheet from the Doctors Company to the hospital once it arrived in early November.

**<u>The Financial Incentive Package Pledged By The Hospital To Dr. Lauer</u>**

30. The financial security offered and agreed to by the hospital enabled Dr. Lauer to consider moving his family nearly a thousand miles away from his existing practice in order to serve

the patient population in Defendant Scott County Hospital's service area.

31. The financial incentives offered by the hospital and incorporated into the subject contract included, but were not limited to:

a. monthly guarantee payments of $47,917.00 during the first year of the contract, beginning October 1, 2006 (less Dr. Lauer's net gross revenue, which was expressly anticipated to be minimal initially and to build gradually thereafter);

b. a furniture allowance of up to $10,000;

c. professional assistance with establishing his practice and with marketing;

d. relocation expenses;

e. reimbursement for Dr. Lauer's family's health and dental insurance premium costs for the first year;

f. physician recruitment for assistance with Dr. Lauer's patients;

g. professional meeting cost reimbursement;

h. reimbursement for Dr. Lauer's professional malpractice premium costs for the first year;

i. payments on Dr. Lauer's medical loans based on a five year amortization; and

j. a potential extension of the monthly guarantee payments for an additional twelve months.

32. A reasonable valuation of the financial incentives for Dr. Lauer in this package exceeds $400,000 during the first year of the contract and $750,000 for term of the agreement.

**<u>The Abrupt Breaches Of The Agreement By The Hospital, Induced By Attentus Healthcare Corp., The Martins, and JLL Partners, Inc.</u>**

33. Not long after the hospital entered into the referenced contract with Dr. Lauer, JLL Partners, Inc. (hereafter "JLL Partners"), which had the largest financial stake in Attentus Healthcare Corp., completed its efforts to replace the original leadership of Attentus Healthcare Corp. in order to allow JLL Partners to exert more control over the business dealings of Attentus Healthcare Corp.; as a result of those efforts, JLL Partners replaced the "co-CEO's" of Attentus Healthcare Corp. with Robert Hammond.

34. Based upon information and belief, Attentus Healthcare Corp. had been failing to generate the financial returns that satisfied JLL Partners and, as a result, Robert Hammond, acting at the behest of JLL Partners, began taking actions to cut costs aggressively.

35. Based upon information and belief, as part of this effort to cut costs, JLL Partners, through its agents and employees, induced and encouraged the hospital to breach its Agreement with Dr. Lauer.

36. More specifically, near the time that Dr. Lauer began practicing in Oneida, JLL Partners and Attentus Healthcare Corp., acting through its agents and employees, and Attentus of Scott County, LLC decided to replace hospital CEO Dale Mulder.

37. The replacement of Mr. Mulder, ultimately with Mark Cain, reflected a change in direction for the Tennessee corporate defendants (and for JLL Partners, in terms of their investment in and direction given to the Tennessee corporate defendants), designed to increase the short term profitability of the hospital by reducing previously planned long term investments. This new strategy included, but was not limited to, inducing a breach of the hospital's contract with Dr. Lauer and

going back on the Tennessee corporate defendants' pledge to build a new hospital for the people of Scott County.

38. Further, Defendants John and Catherine Martin had no desire to have to compete in their practice with a new specialist -- and certainly not with a specialist who was financially supported by the hospital.

39. Accordingly, without regard for the sanctity of the hospital's agreement with Dr. Lauer, beginning in October and continuing through mid-December of 2006, as part of a transparent effort to increase profitability by cutting costs on the part of JLL Partners and the Tennessee corporate defendants and as part of an effort to protect their own personal incomes and practices on the part of Defendants John and Catherine Martin, JLL Partners, Attentus Heathcare Corp., and Defendants John and Catherine Martin induced the hospital to breach the subject contract with Dr. Lauer.

40. In part as a result of the conduct of said defendants, the hospital committed several breaches in the agreement with Dr. Lauer, beginning in October, the first month of the contract, which included, but are limited to, the following:

a. failing to pay / reimburse Dr. Lauer's medical malpractice premiums for the months of October forward;

b. failing to pay / reimburse Dr. Lauer's family's health insurance premiums for the months of October forward;

c. failing to adhere to the emergency call schedule established by the hospital which Dr. Lauer had agreed to and relied upon, which excused Dr. Lauer from taking unscheduled emergency call through the end of the calendar year 2006;

    d. failing to pay the agreed upon guarantee payment for the month of December, 2006;

e. negligently misrepresenting the credentials of Defendant John Martin in a manner which ultimately brought the continuation of Dr. Lauer's malpractice coverage into question; and

f. unilaterally terminating the agreement without cause on December 12, 2006.

41. Dr. Lauer has complied with his obligations under the agreement at all times.

**The Hospital's Termination Of The Contract Without Cause**

42. In a letter dated December 12, 2006, acting directly on behalf of the hospital and in furtherance of JLL Partners' and the Tennessee corporate defendants' efforts to increase profitability by reducing costs unfairly, hospital CEO Mark Cain wrongfully terminated the hospital's agreement with Dr. Lauer without cause. In a transparent attempt to avoid their financial obligations to Dr. Lauer, Mr. Cain, on behalf of Defendant Scott County Hospital, stated two unfounded grounds for Dr. Lauer's termination: (1) that Dr. Lauer failed to adhere to the hospital's emergency call schedule; and (2) a change in the status of Dr. Lauer's malpractice coverage.

43. It was, in fact, the hospital that breached the subject contract with Dr. Lauer by failing to adhere to the call schedule which had been established by the hospital and which Dr. Lauer had relied upon.

44. Upon information and belief, John Martin and Catherine Martin conspired to change the call schedule to disrupt Dr. Lauer's family's move to Oneida, to make his work more difficult, and in an effort to provide a technical basis for the hospital to attempt to terminate the subject contract with Dr. Lauer.

45. Similarly, any problem with regard to the issue of Dr. Lauer's malpractice coverage involved concerns about the credentials of Defendant John Martin and of the hospital generally. Defendant Scott County Hospital refused to work with Dr. Lauer to resolve the issue. This failure to do so constituted a breach of the hospital's contract with Dr. Lauer.

46. Upon information and belief, both Defendant Attentus Healthcare Corp. and Defendant JLL Partners, acting through their agents, officers, and/or employees, promoted, encouraged and induced the actions in breach of the contract between Defendant Scott County and Dr. Lauer in an effort to scuttle the contract.

**Dr. Lauer's Consequential Damages For Breach Of Contract**

47. Due to the conduct of all Defendants, which resulted in disrupting Dr. Lauer's practice, the termination of the subject contract without cause by the hospital, and damages to Dr. Lauer's reputation, it became impossible for Dr. Lauer to have a meaningful opportunity to establish a professional practice in the Scott County community. As a result, Dr. Lauer was left with no viable alternative but to close his practice in Oneida, to work to re-establish his practice elsewhere, and to hold the hospital and the other Defendants accountable for their conduct.

48. Further, based upon information and belief, agents and/or employees of JLL Partners and/or the Tennessee corporate defendants have made slanderous and/or defamatory statements regarding Dr. Lauer which have resulted in injury to his reputation; such slanderous statements, based upon information and belief, were made on or after January of 2007 and such defamatory statements were made on or after December 12, 2006.

**COUNT I**
**BREACH OF CONTRACT**

49. Plaintiff realleges and incorporates as if fully stated herein the allegations contained in paragraphs 1 through 48 of this Complaint.

50. Pursuant to the affiliation agreement, Scott County Hospital agreed to reimburse Plaintiff for his medical malpractice insurance premiums. (Agreement, Exhibit B, ¶ B-10).

51. Plaintiff was diligent in obtaining and maintaining such coverage, but Defendant Scott County Hospital nevertheless breached the subject contract by failing to reimburse Plaintiff for his medical malpractice insurance premiums during the months of October, November and December of 2006.

52. Defendant Scott County Hospital's failure to reimburse Plaintiff for his medical malpractice insurance premiums beginning in October constitutes a material breach of the Agreement, and Defendant Scott County Hospital is liable for all damages resulting therefrom.

53. Pursuant to the affiliation agreement, Scott County Hospital agreed to reimburse Plaintiff for premiums for medical and dental insurance for Plaintiff and his family. (Agreement, Exhibit B, ¶ B-6).

54. Plaintiff obtained commercially reasonable medical and dental insurance for himself and his family, but Scott County Hospital has failed to reimburse him for those premiums since October of 2006.

55. Defendant Scott County Hospital's failure to reimburse Plaintiff for medical and dental premiums paid for him and his family constitutes a material breach of the Agreement, and Defendant Scott County Hospital is liable for all damages resulting therefrom.

56. Defendant Scott County Hospital, acting through its employees and/or agents, failed to adhere to the emergency call schedule established by the hospital at the outset of the subject agreement which was relied upon by Dr. Lauer in making his plans to transition his family from Dallas, Texas to Oneida, Tennessee. Defendant Scott County Hospital's failure to adhere to this schedule constituted a material breach of the Agreement and Defendant Scott County Hospital is liable for all damages resulting therefrom.

57. Defendant Scott County Hospital failed to pay the agreed upon guarantee payment for the month of December, 2006, as set out in the Agreement, Exhibit C. This failure constituted a material breach, and Defendant Scott County Hospital is liable for all damages resulting therefrom.

58. Defendant Scott County Hospital materially breached the Agreement when it unilaterally terminated the Agreement without cause on December 12, 2006. Defendant Scott County Hospital is liable for all damages resulting therefrom.

**COUNT II - TORTIOUS INTERFERENCE WITH CONTRACT**

59. Plaintiff realleges and incorporates as if fully stated herein the allegations contained in paragraphs 1 through 58 of this Complaint.

60. Defendant Catherine Martin had knowledge of the affiliation agreement between Plaintiff and Defendant Scott County Hospital prior to Defendant Scott County Hospital's termination of the Agreement. Defendant Catherine Martin knowingly, intentionally and maliciously induced, caused or procured the breach of the Amended Employment Agreement. In part as a direct, foreseeable and proximate result of the actions of Defendant Catherine Martin, the Agreement was breached and Plaintiff suffered damages.

61. Defendant John Martin had knowledge of the affiliation agreement between Plaintiff

and Defendant Scott County Hospital prior to Defendant Scott County Hospital's termination of the Agreement. Defendant John Martin knowingly, intentionally and maliciously induced, caused or procured the breach of the Agreement. In part as a direct, foreseeable and proximate result of the actions of Defendant John Martin, the Agreement was breached and Plaintiff suffered damages.

62. Agents and/or employees of Attentus Healthcare Corp. had knowledge of the affiliation agreement between Plaintiff and Defendant Scott County Hospital prior to Defendant Scott County Hospital's termination of the Agreement. Acting through its agents and/or employees, Defendant Attentus Healthcare Corp. knowingly, intentionally and maliciously induced, caused or procured the breach of the Agreement. In part as a direct, foreseeable and proximate result of the actions of Defendant Attentus Healthcare Corp., the subject agreement was breached and Plaintiff suffered damages.

63. Based on information and belief, agents and/or employees of JLL Partners had knowledge of the affiliation agreement between Plaintiff and Defendant Scott County Hospital prior to Defendant Scott County Hospital's termination of the Agreement. Acting through its agents and/or employees, Defendant JLL Partners knowingly, intentionally and maliciously induced, caused or procured the breach of the Agreement. In part as a direct, foreseeable and proximate result of the actions of JLL Partners, the subject agreement was breached and Plaintiff suffered damages.

64. The aforesaid actions attributable to Defendants JLL Partners, Attentus Healthcare Corp., John Martin and Catherine Martin make each of them liable to Plaintiff for inducement of breach of his contract with Defendant Scott County Hospital under Tennessee common law.

65. The actions attributable to Defendants JLL Partners, Attentus Healthcare Corp., John Martin and Catherine Martin were intentional, fraudulent, malicious and/or reckless, justifying the

assessment of punitive damages.

## COUNT III
## INDUCEMENT OF BREACH OF CONTRACT
## TENN. CODE ANN. § 47-50-109

66. Plaintiff realleges and incorporates as if fully stated herein the allegations contained in paragraphs 1 through 65 of this Complaint.

67. The referenced actions attributable to Defendants JLL Partners, Attentus Healthcare Corp., John Martin and Catherine Martin which render them liable to Dr. Lauer under Tennessee common law likewise make said Defendants liable to Dr. Lauer for inducement and/or procurement of breach of his contract with Defendant Scott County Hospital under Tenn. Code Ann. § 47-50-109.

## COUNT IV
## SLANDER AND DEFAMATION

68. Plaintiff realleges and incorporates as if fully stated herein the allegations contained in paragraphs 1 through 67 of this Complaint.

69. As a direct and proximate result of the slander and defamation referenced above, Dr. Lauer has sustained injuries and damages to his professional reputation.

70. As a direct and proximate result of each of the causes of action plead against the Defendants herein, Dr. Lauer has sustained injuries, losses and damages in an amount to be proven at trial, but which exceeds $75,000, for which the Defendants are liable.

WHEREFORE, Plaintiff respectfully requests:

1. Full restitution as provided by law for compensatory damages in the amount the jury finds to be just, based on the proof and the applicable law, not to exceed the sum of $500,000.00; and treble damages and/or punitive damages in the amount the jury finds to be just, based on the

proof and the applicable law;

2. That Plaintiff be awarded all costs of the Court and all discretionary costs, including but not limited to all expert fees, court reporter fees, exhibit expenses, deposition expenses, any other litigation expenses, and any and all other costs allowable by statute (including, but not limited to 28 USC §1920), common law, and/or pursuant to Rule 54 of the Federal Rules of Civil Procedure, Plaintiff moving that all such costs and expenses be taxed to the Defendants immediately upon entry of any Judgment in this cause;

3. That Plaintiff be awarded all pre-judgment interest and post-judgment interest allowable by common law or statute as part of their relief requested herein;

4. That Plaintiff be awarded all attorneys' fees allowable by the referenced state statutes or common law; and

5. That a jury be impaneled to hear this cause.

Respectfully submitted this 17th day of May, 2007.

**SCOTT LAUER**, Plaintiff

By: ______________________________

WAYNE A. RITCHIE II, BPR # 013936
**RITCHIE, DILLARD & DAVIES, P.C.**
606 W. Main Street, Suite 300
Post Office Box 1126
Knoxville, TN 37901-1126
Phone: (865) 637-0661
Fax: (865) 524-4623
E-mail: war@rddlawfirm.com

**Attorney for Plaintiff**